First case this morning is case number 416-0492 Bradley, Sweeney v. City of Decatur. For the appellant appearing is John D. Robinson for the Appalachian Herald Stocks. Mr. Robinson, you may proceed. Good morning and may it please the court, counsel. If Brad Sweeney's complaint is considered and read in its entirety and if it is considered true and viewed in a light most favorable to him as the non-moving party in this section 2-615 motion to dismiss, it has to stand. It's a very simple matter of pleading at this stage. The presumptions are in favor of Mr. Sweeney as the plaintiff. Unfortunately, the circuit court did just the opposite. The circuit court added characterizations like forceful disagreement, voiciferous disagreement, that Mr. Sweeney got into the city manager's face, Mr. Gleason, and told him where to go. None of those facts are in this case. None of them are in the pleading. Yet that's the view of the complaint that appears. Those facts were not presented to the trial court? No. They're not in the complaint, Your Honor, and that's what the court was to be looking at, I think, and what we're to be considering here. Again, they're to be assumed true and viewed in a favorable way to Mr. Sweeney as the non-moving party. Well, I'm a little confused about that. If those facts were never alleged in front of the trial court, how did the trial court get to the point where the trial court cited those alleged facts? I have no idea, and there's no citation to them. They appear in the order, which Your Honor's probably read, and I would call them characterizations, but there are no words, no characterizations in the complaint like that. That ultimately leads me to conclude, and we've briefed this, it is my belief that the court ultimately resolved what would be the ultimate issue of fact for a jury in this case, which again is something that the circuit court acknowledged that it shouldn't do and it couldn't do at this stage of pleading. But it decided that apparently, based on its own characterizations of the facts alleged, that Mr. Sweeney as the police chief could be terminated and that there was just cause for doing so when that clearly, as all the cases indicate, is not the province of the court at this stage. I'd like to talk a minute about the two counts. The first one is, count one is the retaliatory discharge, the common law count. We believe that this count is very similar to the theories of Palmateer, the Collins case, and in fact, the public policy that you see in the Illinois Whistleblower Act itself, which is to promote the protection of employees who report wrongful, what they believe in good faith is wrongful conduct, in government. The trial court… Yes, it is. The Supreme Court indicated that we have to be very careful about expanding this, that it's supposed to be a limited remedy. The court has used language rejecting most efforts to expand it beyond essentially where it started with regard to the workers' compensation circumstance. And where there is, as you allege here, an alternative remedy, namely the Whistleblowers Act, why should we even consider expanding it instead of saying, if there's any alternative remedy that's available, that's what you should use. We're not going to be expanding the claim of discharge. Your Honor, with all due respect, this is not an expansion of anything that the Supreme Court has ruled. If you look at the Palmateer decision, it's basically a whistleblower. It's followed two or three years after the Kelsey, the Supreme Court decision on workers' comp in Kelsey v. Motorola. Both of those cases were the law from the 80s, the early 80s up through when the Whistleblower Act was passed in 2004, been amended two or three times since then. But basically, numerous cases, Your Honor, have gone forward on both theories. Ultimately, the jury can determine which, if any. And here, the two counts are not the same either because the basis for the common law count number one, one of the bases is free speech and objection to additional taxes for the citizens of Decatur. And that was dealt with by the circuit court by simply saying, and the order says, Sweeney's complaint does not allege his speech or refusal to speak as opposition to more taxes as a basis for his termination. Completely incomprehensible. The order says it's not there. Well, what about the whistleblowing act? That's not just a metaphor. Doesn't a person who seeks protection under it have to blow the whistle? Absolutely. Meaning, if, in this case, Mr. Sweeney, Chief Sweeney, sees something improper, impermissible, illegal, whatever, to blow the whistle on that person to, what, some higher authority? How can it be viewed as whistleblowing when you complain to the higher authority who is the guy about whom you're complaining? The Brame case, Your Honor, speaks to that and says that if an employer, under section 15B of the whistleblower act, which is what Brad Sweeney's complaint was brought under, count two was brought under, he alleges that he reported or disclosed information which is precisely what the act says that he must do. But in Brame, I mean, there you had the plaintiff having complained to the mayor who had oversight over the police chief, right? Correct. Here, if you were to apply Brame, it would be plaintiff complaining to the police chief about the police chief's actions, not plaintiff complaining to the mayor. So Brame really is the classic whistleblowing scenario. What you have here is, just as Justice Steinman was pointing out, you have the complaint made about the wrongdoer being made to the wrongdoer. And that's not what Brame says. It isn't precisely the same, but Brame's, the decision in Brame was that for the first time, a court looked at the plain meaning of the Illinois whistleblower act to see what is, what would constitute, what would meet the standard of 15B disclosure if your employer was a government or law enforcement agency. And here, that's precisely what it is, your honor. And this is similar to Brame in that Brame first reached that and said, it's okay. We believe that the fair and plain meaning of the Illinois whistleblower act, specifically section 15B, is, and it says it very clearly, a disclosure to a government agency or a law enforcement agency meets the standard. So complaining to the guy who's the wrongdoer about his wrongdoing is enough under the whistleblower act? Absolutely. If it's your, if you're, if it's in a government. How does that make any sense? It makes sense in the sense that it, because the primary purpose of the whistleblower act, as this court stated in, two years ago, in 2015, in the Larson v., I forget, a hospital case, the Larson case, stated that the purpose of the whistleblower act is to protect the employee who discloses information. Who would need protection more than a government employee reporting to his supervisor, which is mandated, which is required? His report was to the city manager, Gleason. No one else, according to the city code indicator. So who would need protection, your honor, more than... The theory is to have you complain to somebody to have something that could be done. If you're complaining to the wrongdoer, why does he, how is he think anything's going to happen with this? He can complain to the mayor, go to the city council, maybe even go to the press. But when you're complaining to the wrongdoer, that covers you under the act. It seems to me that just, you're not blowing the whistle on publicly or even internally or to anyone who could do anything about it. That's not what this was meant to do. That's not what the Brame case says. We're not bound by the Brame case, counsel. I understand that. So it's, at best, it's persuasive authority. Why should we follow it? Well, I'm suggesting that the court follow its own decision in the Larson case from two years ago, which says... No, we have no decision which has held that complaining to the wrongdoer of his wrongdoing is consistent with the whistleblower act. The act is designed, 15b, and the entire act, according to the cases, including the Larson case from this court two years ago, is to protect the whistleblower. From blowing the whistle to others about the wrongdoer. Exactly. And in this case... We don't have that here, do we? Yes, we do. We do. Because, among other things, the complaint alleges, Sweeney's complaint alleges that he spoke to his deputy chief about this, the fellow that ended up driving the manager to St. Louis in the squad car, after he was ordered to do that. So he complained to that, the court chose to bring it up in the order, mentioned it, but said, basically dismissed it as not being important. But yes, the primary allegations in the complaint were that he reported this to his supervisor, which is what the city code says he has to do. Yes, could he have reported it to someone else, incidentally reporting it under the act, under the plain meaning of the act, going to the Herald Review newspaper in Decatur, would not suffice. It has to be a government or a law enforcement agency. Pardon? How about the mayor? There are all kinds of possibilities. He could have gone to the FBI, could have gone to the state police, but that is not required under the plain meaning of the Whistleblower Act. What about the language of the Whistleblower Act, the words disclosing information? You've used the word disclosure several times here this morning. Mr. Stocks, in his brief, points out that disclosure means to reveal information. And here, Mr. Sweeney is, in essence, complaining to Mr. Gleason about something that Mr. Gleason already knows. How does that constitute a disclosure of information? It was, as we've argued this in the circuit court, it's a disclosure, Your Honor, because based on the record in this case, Mr. Gleason says that he can do anything he wants. He has no restrictions under the city code as a city manager, and he controls everything in the city police department. How does that respond to his question? His question is, how does this constitute a disclosure? Because he was, well, first of all... Gleason already knows. He disclosed it. He's the wrongdoer, so how is this a disclosure? Well, it is a disclosure, Your Honor, because apparently he didn't know that there was something wrong with it. Apparently, city manager Gleason claims that he didn't know there was anything wrong with using public facilities and public resources and personnel for his own personal benefit. Now, if that's the case, it was news to him. It was a disclosure of information to him, and it ought to be protected under the Whistleblower Act. And we are asking this Court to find so fine that the reasonable and plain meaning of the Act is to protect the whistleblower. It is not to cause an investigation. If you consider, in that sense, Section 20, which the Court said Section 20, which is refusing to act, also applies here. And so not only did Mr. Sweeney have to allege that he disclosed information about the whistleblowing activity or wrongful conduct, the Court below said that Sweeney must also allege and prove that he refused to participate, and that's not the law. Section 20 is an entirely separate section of the Act. The Sardega opinion... You would agree you did not allege Section 20? Absolutely agree with that. Absolutely. We didn't try to agree with that. We said that he did not voluntarily cooperate. He challenged this, much like the Collins case and decision in 2013, I think the Second District. But there, there was no report. Again, that turned out to be a common law case, but it went forward. Here, the Court is basically preventing Mr. Sweeney from going forward and having his day at trial in court. Mr. Robinson, I just want to make sure I understand your analysis as to the disclosure aspect of this. You're not suggesting that Mr. Sweeney informed Mr. Gleeson of facts that Mr. Gleeson didn't already know, but you're indicating the disclosure was as to it having been improper conduct, that it was not allowed, and that's what constituted the disclosure of information was the fact that it was not proper. Yes, because, and I may quote the exact provision, 15B of the Act, the Illinois Whistleblower Act says, an employer may not retaliate against an employee for disclosing information to a government or law enforcement agency where the employee has reasonable cause to believe that the information discloses a violation of a state or federal law, rule, or regulation. The word disclosure is broad. The word information is broad. I would submit to Your Honor that the Act does not require, and Brame spoke to this, the Act is clear and plain on its face. It's broad on its face in the sense of information. That information could be that Mr. Sweeney said, I believe you're breaking the law because of what you did. And that's, as I understand it, that's what's been alleged and that's what was said to Mr. Gleeson by Sweeney. That's information. The Act does not require that he prove that it was unlawful. It doesn't require him to arrest him. It doesn't require him to go public to the newspaper. It just requires a disclosure of information. And again, the main purpose of the statute is to protect the whistleblower. And if this isn't a situation not unlike Palmatier from the 80s, then the Act will have no meaning whatsoever. Because this is classic. Well, you're saying your client should be protected from being fired because he blew the whistle, correct? I am saying that my client should have a day in court to prove whether or not he was retaliated against. And in a sense, yes, I am saying what you're honored to ask. But I'm saying it in a slightly different way. I'm saying that we need to get to the next step, which is Sweeney ought to at least have an opportunity, under the pleading rules of the state of Illinois, to get to trial. But the fact is, he didn't blow the whistle until he was fired. Those are... That is not correct. No, that is not the facts. The facts are, your honor, that he blew the whistle when this was happening. The complaint specifically says that in May of 2015 or 2016, when this was happening and when he was being ordered, he told him right then, and he told him a week or so later. And again, this is in the complaint. But as Justice Steinman has pointed out, he didn't tell the state's attorney. He didn't tell the city council. He didn't tell the mayor. There were all kinds of opportunities for him to blow the whistle. He talked to his deputy chief, and he's not required to go to the newspaper or to go to anyone else. Under the plain meaning of this statute, and I'm offering up, I understand Brame is not binding on this court as another of the appellate court of Illinois. But I would say to you that on sort of a collateral point, the Sardega Court decision, which was completely misinterpreted by the circuit court, to hold that Sweeney had to not only disclose information, but also refuse to participate. A complete misinterpretation. The Illinois Supreme Court has said, look, other appellate court decisions may not be binding on another appellate court, but the law and the state, if it's unquestioned, is binding on every circuit court. Whether that's the Second Circuit, binding on our district, and that wasn't followed here. So I submit to you that what you see from this is that Sweeney didn't ever really have a chance to get a fair look at his complaint. And again, all we ask is... Mr. Robinson, we're out of time, so have a rebuttal. Thank you. Mr. Stocks. Thank you, Your Honors. McQueen's Court Counsel first addressed the Whistleblower Act. As the questions have indicated, it is the city's position that no actual act of whistleblowing ever took place here. In our facts, Mr. Sweeney had antecedent knowledge of this potential offense. He does not then decide to actually say anything until after it's happened. And he reports to the violator himself, which we submit is not a whistleblower that would qualify under the act. Or look at it in the plain language of the statute, if you actually accept it as written and accept their interpretation of it. He could have stood in front of the mirror and said, Gleason violated the law. And in the strict language of the statute, he would have a whistleblower offense, standing in front of the mirror and telling himself. But what we have here is the collision of two principles, two statutes, actually, two policies. He is the chief of police, and we talk about a 2-6-15 motion in the ultimate facts alleged. We have the ultimate fact, which is entirely dispositive here. He is the chief of police with the statutory duty to enforce the very law that he now wants to shield himself from doing anything. I recognize the Whistleblower Act is intended to be a shield, but it's intended to be a shield if you take the risk to do something about the offense, not if you simply lay on the ground and put it over your head. And it has become now a sword for after he's been dismissed to try to recapture his job. Well, are you saying that if the facts were that Mr. Sweeney had complained to the mayor, everything else being equal here, that Mr. Sweeney would not be able to make a claim under the Whistleblower Act? It depends on the timing under the facts of our case. But for purposes of having a qualifying disclosure, there has to be the intent of the whistleblower to bring about redress to the wrongful conduct, shed light on it. And certainly, as to the who do you tell it to, going to the mayor is a step that is consistent with the statute. What about, as has been suggested here, the state's attorney or state police? Sheriff, FBI, a whole universe of individuals. That would suffice? Would suffice for that element. And keep in mind, when you're the chief of police, who better would know where to go than the chief of police? Because the alternative is really somewhat nefarious, is that the chief of police, when obligated to take these acts, more so than anyone else, can insulate himself and protect his job, which is what we submit these facts show. The ultimate fact allegation that he was chief of police, and the duties that that triggered, if we do not place primary prevalence to his duties under statute as chief of police, and allow him to still claim whistleblower protection, the whistleblower protection really becomes meaningless. What that means is that the chief of police, who does he report to? There's no one ever going to enforce the law. So if you tell the chief of police, and the chief of police can have protection, you have just guaranteed that this dog is chasing its tail, and the law will never be enforced. That's why it has to go outside of the violator to person wanting to blow the whistle. And it's only complicated here when we have the chief of police who has the duty to enforce this very law. Mr. Robinson referred to certain things in the trial court's order which were not pled. What was that all about? Well, they're serious things. It's a de novo review, so we will deal with what is in the pleadings. There are allegations in the mid-20s of the complaint dealing with the hostility in the exchanges between the parties, in the city department head meeting, and the declination to speak to the city council, happening in the few days prior to the termination decision. The express language, we also have down below, which we believe is another basis to affirm the judgment below, this was a 2619.1 motion, and there was a large body of evidentiary materials germane to elements of that. So I would anticipate that what has happened is probably some of those facts have polluted into the actual order. One more reason why 2619.1 motions should never be used. They're independent grounds and the motion was designated in accordance with the rule. So I don't apologize for our approach, but we recognize that the order below was a 2615. Mr. Stocks, I'm sorry, I just wanted to ask you a question in regards to brain. Mr. Robinson is suggesting that we should apply brain, but I don't understand how that helps Mr. Sweeney's case here because wasn't the fact scenario in brain where the plaintiff who was alleging wrongdoing by the police chief complained to the mayor and not to the police chief, is that correct? Those are the facts in the very first paragraph. There are two distinguishing facts from brain. First, what I'll call the leapfrog whistleblower, you just didn't go to the whistleblower. But secondly, it was regarding his discovery of conduct that already had been committed. Here, Mr. Sweeney had knowledge, advanced knowledge of this alleged improper act. And because he had the advanced knowledge, we truly have a Section 20 case. He wants to call it a Section 15B case, but he can't. He had prior knowledge, and he says that he involuntarily allowed. Now, whatever that means, allow is a verb, means it happens and you know it happened. And he had knowledge, and it was his staff under his command that drove the car. He knew it on May 4 under the allegations of the complaint, and he allowed it to occur on May 7 without any act of whistleblow to a third party, under my definition of a disclosure at all, in those three days as he saw it occurring, and then sits on it for seven more months after that, eight more months by the time he's terminated. And in brain, you had someone who discovered an act that had already occurred. Now, the significance to the prior knowledge before the offense had even occurred is, one, it puts Sweeney only in a Section 20 context. But also, to ask ourselves, we have to harmonize Section 15B and Section 20. Otherwise, we're creating an incentive for, in this instance, the police chief, to see a gathering offense. Turn his back to it, wait for it to happen, and then complain about it, because he's got a broader remedy under the Whistleblower Act than he would have had had he done his statutory duty when he first learned about it. And that is the court relying upon Section 20 and the Sardegna interpretation of it, saying that you cannot participate and you can't be a mere complainer or someone who tolerates it. That you have to do more than that to secure the protections of the Whistleblower Act. And Mr. Sweeney has none of those indicia of doing anything to try to protect himself or to bring about a change in what he believed was either threatened or actual wrongful conduct, assuming what he alleges to have even occurred. I'd make one other note while I'm on this. His allegation, as he made the distinction that while Gleason knew the facts, he may not have known the legal conclusions that attached to those facts. Sweeney didn't disclose those legal conclusions, and his complaint doesn't allege that he disclosed those legal conclusions. He said only improper. Politically improper, not something somebody would otherwise consider prudent. Improper is not stating you're violating the official misconduct statute. It is not you are violating Section 6.4 of the Municipal Code. It is not a disclosure that that violates this criminal act, that federal policy, whatnot. There is absolutely no content to his disclosure to bring him within a Whistleblower Act. So this even becomes more amorphous as we review and seek judicial review of every termination that may occur because anyone can say, well, I complained about that being improper. But we don't have any evidence, not even alleged, that he told Gleason. Even if we want to accept that you can whistleblow to the wrongdoer by telling him what he's doing is wrong, you have to then tell him what is wrong with it. And I would submit that is entirely consistent with a plain reading of the Whistleblower Act. Tell us the rule, the regulation. Tell us why and what it is wrong. To put some burden upon the person seeking the protection of the Whistleblower Act. Otherwise, I fear this act, as applied as Mr. Sweeney would seek, is virtually limitless. And it is going to invite judicial review in determination decisions on a very, very broad basis. And their interpretation of the Whistleblower Act, if I'm a lawyer and a police chief calls me and they get the interpretation of that act they want today, and the chief calls and says, hey, the mayor's doing something illegal, I think they're going to do something illegal, what should I do? I, as the lawyer, would look at this and say, do nothing. Wait for it to happen, then complain about it. Because then you have the broadest remedy, the broadest realm of protection. But at the same time, you're the police chief. And the whole idea of this should be to prevent this wrongdoing. We are disincentivizing proactive efforts that serve the very purpose of the statute. And I submit that that is where I would be, as a lawyer counseling clients, if we get an opinion of the nature that Mr. Sweeney seeks. On the common law whistleblower, first, I think there is a discrepancy or differences in some of the opinions whether the Whistleblower Act is a codification or an expansion of the common law whistleblower. I think for purposes of resolving this case, it really would not matter. I would view that the act is probably more expansive than what the common law remedy would be. But here, if what the act is, the improper act ultimately, is the misuse of public funds for personal benefit, that's official misconduct. And the Fellhauer opinion already has stated that the tort of retaliatory discharge is not available to vindicate that particular conduct. And for those purposes, I would submit that there is no common law remedy that would survive if the Whistleblower Act remedy does not survive under statute. Well, I think he's also arguing under the common law theory is the constitutional violation. The First Amendment. And Barbie Calso is the one time that the Illinois Supreme Court, and it was in a private employment context, has reviewed whether they would extend speech protection within the four corners of a retaliatory discharge claim. And they declined to do so. And in the Sutherland case, which also is cited, I think in both of our briefs, the Illinois Supreme Court has declined to recognize that expansion. Every Supreme Court case in Illinois that I recall in the last 10, 20 years, Turner, the one cited in my brief, are highly cautious about expanding the tort of retaliatory discharge. And in fact, are not expanding it. And so I would submit that this is not the case to do so. So then let's look at the actual facts of what we're dealing with in this speech. The occasion, only because he's a city department head, he's in an internal meeting of city department heads. The only time he's made a statement, and that's where you have the robust free exchange, some of the aspects cited in the court's brief. That occasion is not speaking as a private citizen. That occasion is him, he's at that table only because he has his public job. And these are the principles that we believe the Garcetti case lays out. So his occasion is purely because of his public position, discussing public issues within the body that is going to formulate the policy for the city of Decatur. And he's part of it. He also claims, as I read it, the brief and the complaint is that he was discharged in part for refusing to speak in favor of a tax increase at a city council meeting, which is public. Doesn't that raise a First Amendment concern? No. As a police chief and as the section on his job duties, the city manager can assign him the duty of speaking as police chief in advance of the policies of the city. And the city manager sets the policies and he's an employee speaking as police chief. If he wanted to go on Facebook, if he wanted to go to the city council meeting in his own stead, as a private citizen without the badge on, without the indicia of his public office and say, I think this is a bad idea, he had every right to do that. But he also is an employee of the city. And he is one of the policy makers within city government as a department head. One of the benefactors of, while this particular tax may have been earmarked to a particular purpose, it's still your relief pressure and public spending in one sense. I'm not sure I followed that argument. So you're saying he could have gone to the city council meeting with his badge and said, I support the tax, then take it off and say, now as a member of the public, I don't support the tax increase. Yes, he can. And there's a distinction there. There is a distinction because in the first instance, he is acting as an employee of his boss. He's an at-will employee who's been given an order to advance the policies of his boss, the city manager and of the city of Decatur. The Garcetti case speaks to that, is that when the occasion for your speech is in furtherance of the policies of your employer, then that is not, you can be subject for discipline if you are insubordinate and do not serve the policies of your employer. All public employers, all public employers have the concern about public finance. Public finance can only come from the public. And there's always going to be some discussion, some interface between what would be a public statement, but it is made in your capacity as an employee of the city and as the municipal code empowers the city manager to give the police chief those job assignments. Now here, we're not really dealing with speech. Here we're dealing with negative speech. And that is even more of a quandary. He didn't say anything. He didn't go to the city council meeting and say anything one way or the other. What he effectively did is was insubordinate and declined to do a task that his employer had assigned to him within the scope of his job description under the municipal code and on the occasion for that speech was directly and extricably related. It wasn't like he was off speaking on something not occurring in his city head meetings. For example, say someone was terminated by the city manager and you went to the city council to complain about that and that wasn't part of what you were involved in. In their complaint, he's part of the group of city department heads that were discussing this policy. The city department heads and the city manager arrived at a policy decision that he may have disagreed with individually, but still that employer is entitled to have those department heads and those employees to speak in furtherance of the policy that was established. Not to allow the dissenter to always stand and frustrate the employer's policies. Really, that's what he's saying. I should be forever protected as a dissenter, whether it follows the policies my boss and that the city has set. In Garcetti and in the cases it cites, a public employer has a legitimate role in defining and requiring its employees to speak in furtherance of the policies established by that public employer. Here, the occasion for the non-speech that he decided not to make was within that. His other allegations in his complaint right before that are, I'm in the meeting where we're talking about it, we decide our policy, they ask me to speak in furtherance of that policy, and I refuse to. It's his way or no way. That's highly frustrating to the at-will doctrine. Public employers are entitled to those protections as well. Thank you. Thank you for your argument. Is there any rebuttal, Mr. Robinson? Yes. I'd like to address two or three of the points. The first counsel started with making a point that it was seven months later before Mr. Sweeney registered any whistleblowing. I would direct your honors to paragraph 7 and 8 of the complaint where it says, on about May 4th of 2015, the manager told Sweeney to provide his police car and a uniformed officer to drive him. I'll skip down. In response, Sweeney reported to Gleason that this personal use of public resources would be improper. That's all that's required under the common law, by the way. At this point, Gleason ordered police chief Sweeney to have a police car waiting at the The next paragraph, paragraph 8, is an allegation about the discussion between Sweeney and his deputy chief Getz about the same topic. Counsel mentioned the fell-hour decision. Your honor wanted to make a distinction, and there is a difference between the facts and the brain case, although the theory is the same, I would submit, that it's a matter of reporting. All you need to do under the plain meaning of the act is report to your employer, if you happen to be a government or law enforcement. Here, Sweeney was both. He was a member of city government, in a sense, but he was also a member of the Decatur City Police Department. He reported as he was required to to his supervisor. The fell-hour case that is relied on heavily by the city here is inapplicable, in the sense, for two reasons. Number one, the Supreme Court in that case said that Mr. Fell-hour did not specify, with any detail whatsoever, the specific law that he was claiming was being violated by this. In Fell-hour, unlike Decatur, there was a mandatory review by the Mayor and City Council of the termination. The Illinois Municipal Code provides that for all municipalities in the state of Illinois, unless home rule overrules it, which is what happened in Decatur, there is a mandatory review by the Mayor and City Council. That is not available here. So for those two very significant reasons, Fell-hour is not applicable. Barbie Kelso was also brought up. We've briefed this both in our opening brief and in our reply brief. Barbie Kelso is a statement by the Supreme Court that implies repeatedly that free speech applies not to private employers. And that's what you had in that case, was private employment. It implies that it will apply. Lastly, I would like to, and this is in our reply brief, the case of Daniel B. Hoffman Estates is actually an appellate court decision which recognizes free speech as a possible basis for a claim of retaliatory discharge. We are asking this court to sustain both of the counts. I understand the troubles from the questions that you've asked about literal interpretation of the plain meaning of the Illinois Whistleblower Act, but I submit to you that there is no justification under the plain meaning of the statute to require him to both refuse and to plead disclosure. And he's done that. We have to remember, this is a Section 615 motion where all he has to do, and it's presumed, that his allegations are true. And if they're taken as true, and if they're viewed in a light most favorable to him, he ought to at least get a day in court. And if he can't prove it, then he can't prove it. So we ask the court to reverse this. I mean, there are so many other issues that I could go back to, like the fact that Circuit Court failed to even acknowledge that he had pled free speech in Count 1, or even discuss in the order that he had Whistleblower as a common law basis. We've discussed that here today, but it's nowhere to be found in the court's order. We've discussed the fact that the court characterized pleadings for him as being aggressive. Nowhere in the complaint is there any factual basis in the allegations for those kind of characterizations by the court. So we would ask you to at least allow the case, reverse it, allow it to go to discovery and to trial, which is what he's entitled to, we believe, under the common law and under the Illinois Whistleblower Act. Thank you.